(56 Misc. Rep. 150.)

### QUENTELL v. NEW YORK COTTON EXCHANGE et al.

(Supreme Court, Special Term, New York County. October 16, 1907.)

**1. EXCHANGES—CONSTITUTION AND BY-LAWS BINDING ON MEMBERS.**

Where a person joins an exchange, even though his membership carries property rights, he subjects himself to its constitution and by-laws.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 21, Exchanges, § 4.]

**2. SAME.**

Where the by-laws of an exchange provide that, upon instituting proceedings against a member, a copy of the complaint, documentary evidence, and a list of adverse witnesses must be served upon accused, and that the sections of the by-laws governing the proceedings must be specifically pointed out to him, a notice to a member to appear before the supervisory committee on a stated day for the purpose of investigating his connection with a certain suit and other matters, citing a provision of the by-laws as warrant for the notification, is not sufficient to authorize such a proceeding; a strict compliance with the constitution and by-laws being essential.

**3. SAME—APPEAL TO COURTS.**

The rule that a member of an exchange must first exhaust his remedy within the corporation before the courts will interfere applies only where proceedings are conducted in conformity with the constitution and by-laws of the organization.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 21, Exchanges, § 7.]

**4. SAME.**

The law does not require a member of an exchange to resort to higher authority within the organization before seeking recovery in the courts, where it appears that such action would be futile.

Motion by William P. Quentell for a temporary injunction against interference by the New York Cotton Exchange and others with his rights as a member. Motion granted in part.

Ivins, Mason, Wolff & Hoguet (William M. Ivins, Herbert D. Mason, and Robert L. Hoguet, of counsel), for plaintiff.

Strong & Cadwalader (Henry W. Taft and Arthur C. Patterson, of counsel), for defendants.

FORD, J. An application is made by plaintiff for a temporary injunction restraining the New York Cotton Exchange and the members of its supervisory committee, defendants, from alleged unlawful interference with the rights of the plaintiff as a member of the exchange. The plaintiff alleges that the defendants have instituted proceedings against him, with intent to suspend or expel him from the organization, in violation of those provisions of its by-laws intended for the protection of the personal and property rights of members charged with misconduct warranting suspension or expulsion.

Plaintiff contends that, should the defendants be permitted to proceed against him as they have begun, he would suffer irremediable damage to his business, reputation, and other personal and property interests. That suspension or expulsion would entail grave consequences to plaintiff is not denied by the defendants, but that this is a case for equitable relief by injunction is denied. Upon this phase of the case it is sufficient to remark that the failure to deny the first proposition overcomes the denial of the second. It seems to me to be a case within the class for which the injunctive remedy was originated, provided, of course, the plaintiff sustains his allegations as to the wrongful proceedings against him. He has been a member for some seven years, and was heretofore a partner of one Price, who, some months ago, commenced an action against the New York Cotton Exchange and others. That action unquestionably had the effect of throwing the business of the Exchange into temporary confusion and disturbed the peace of mind of certain of its influential members. It was considered by them as cause for grave complaint against the persons responsible for its inception. Plaintiff asserts that those members, or some of them, held him largely responsible for the beginning of the suit, and it seems to have been the germ from which the present controversy grew.

It appears that on August 12, 1907, the board of managers, the real governing body of the Exchange, passed a resolution to the effect "that the supervisory committee be instructed to look into the matter of the Price suit, in which members have taken part in assisting Mr. Price in bringing suit against the Exchange." On August 19th the plaintiff received a letter from the chairman of the supervisory committee, notifying him to appear before the committee on August 23d for the purpose of investigating his connection with the Price suit and other matters, and citing paragraph C of section 35 of the by-laws as its warrant for the notification. Plaintiff replied at length, denying the right of the committee to summon him in such manner, insisting that the by-laws applicable to such proceedings were being disregarded, and requesting that he be informed as to what was in contemplation by the committee. The answer to plaintiff's letter was brief and to the point. It referred him to paragraph C of section 35 of the by-laws as warranting the committee's action, and curtly repeated the former notification to him to appear before the committee at 3 :15 p. m. on August 23d. To this plaintiff responded substantially as before, and on August 23d received the following reply:

"We acknowledge receipt of your letter of August 22d. Kindly advise us whether you intend to appear before the supervisory committee this afternoon at 3 :30 p. m. or not.

"I am yours very truly,                    S. T. Hubbard,
                    "Chairman Supervisory Committee."

Plaintiff appeared, and reiterated his objections to the regularity of the proceedings, and insisted that the committee observe the provisions of the by-laws. What else occurred is disputed; but plaintiff alleges that, owing to the demonstration of hostility to him, on this as on previous occasions, on the part of the defendants Hubbard, Mandelbaum, and Hicks, constituting the supervisory committee, he

became convinced that it was their intention to "railroad" him out of the Exchange, in disregard of his rights and of the sections of the by-laws governing proceedings looking to the suspension or expulsion of a member. That the board of managers were in sympathy with this purpose is shown, he contends, by a resolution passed by it after the proceedings instituted before the supervisory committee and plaintiff's attitude and protests were made known to the board. That resolution was in effect a vote of confidence in the supervisory committee; hence, plaintiff alleges, he had no hope of redress in that higher tribunal, and would be summarily excluded from the Exchange, his seat worth $15,000 and his insurance amounting to $4,500 forfeited, his business ruined, and his personal reputation irreparably impaired, had he not resorted to this court and secured the temporary stay which has tied the hands of the defendants until the determination of this motion.

It is elementary that one who joins an organization like the New York Cotton Exchange, even though his membership carries property rights, voluntarily subjects himself to its constitution and by-laws. If he is guilty of misconduct whose penalty is expulsion, according to their provisions, he cannot complain if expelled, provided the procedure is in accord with those provisions, no matter how greatly he may be damaged. When he has important vested interests, however, strict compliance with the regulations governing the bringing and trial of charges will be insisted upon. The real question here is: Did the defendants proceed in accordance, or even in substantial accordance, with those regulations? The provision of the by-laws to which the defendants referred for justification of their acts is paragraph C of section 35. That section in its entirety reads as follows:

"Sec. 35. The board of managers may take proceedings:

"(a) Upon complaint of any committee or arbitrators having authority under these by-laws to so complain;

"(b) Upon complaint of any member of the Exchange; or

"(c) Of its own volition, in such cases where no committee of the Exchange has cognizance of, and no member of the Exchange makes complaint of, the alleged misconduct or infraction of the by-laws and rules."

The procedure to be followed is in the next section:

"Sec. 36. All complaints must be made in writing, specifically alleging the particular act or acts complained of, must be addressed to the supervisory committee, and accompanied by all the documentary evidence bearing upon the case in the possession of the complainant or complainants, and by a list of the witnesses by whom it is proposed to prove the allegations of the complaint. The chairman of the supervisory committee shall thereupon serve upon the member against whom the complaint is made a copy of the complaint, and of the documentary evidence, a list of the witnesses by whom it is proposed to prove the complaint, and a copy of the by-laws, pointing out the section alleged to have been violated, the section under which the complaint is made, and the sections governing the method of procedure in the case. Within five days after such service the member against whom the complaint is made shall serve upon the chairman of the supervisory committee his answer, in writing, to said complaint, together with all documentary evidence in his possession bearing upon the case, and a list of the witnesses by whom he proposes to disprove the allegations of the complaint. The chairman of the supervisory committee, as soon as expedient after the receipt of said answer, or, if no answer is received, after the expiration of five days from the date of service of the copy of the complaint, shall notify

both parties, and the witnesses named by each, of the time and place at which the committee will meet to act on such complaint. If, after examination, the committee shall be of opinion that the allegations of the complaint are true, and have been sufficiently proven, and that the member complained of has been guilty of misconduct under the provisions of these by-laws, it shall so report in writing to the board of managers, and shall deliver to the board all documents received by it as evidence in the case, and a brief summary of the facts established by the testimony. The committee shall have the power to adjourn the hearing of the case from time to time."

It appears, therefore, when the two sections are read together, that, while paragraph C of section 35 authorizes the board of managers to institute proceedings against a member, section 36 requires that in that as in every other case coming under section 35, service of a copy of the complaint, documentary evidence, and a list of the adverse witnesses must be made upon the accused, and that the sections of the by-laws governing the entire proceedings must be specifically pointed out to him. There was not even a pretense of compliance with any of these requirements. No other section or sections of the by-laws have the least applicability to the case of plaintiff. That the proceedings in question were not authorized by the by-laws is tacitly admitted by the defendants, when they argue that the power to institute such proceedings inheres in the organization outside, and independently, of its written charter and by-laws. They contend that this was merely a preliminary examination, for the purpose of determining whether a proceeding under section 36 should be begun; that it was in no sense a trial; that there was nothing compulsory about it; and that, in effect, plaintiff might or might not appear or answer questions, as he saw fit, without prejudice to himself in the eyes of the supervisory committee or the board of managers.

The curt notices to plaintiff to attend before the committee hardly bear out this version of the proceedings. They read less like requests than orders to appear. The sworn statements of the defendants Hubbard, Mandelbaum, and Hicks (the supervisory committee), as to what occurred before them when plaintiff appeared in response to their notices, tend to show that they regarded their inquisition as in the highest degree compulsory. In their answer they allege that they "informed the plaintiff that he would be allowed to cross-examine witnesses personally, and to produce witnesses on his own behalf, and be heard in his own behalf," and that "it [the committee] would summon witnesses for him." The defendant Hubbard swears, in his affidavit of September 9th, that "the plaintiff requested an adjournment on the ground that his counsel was engaged, which adjournment was denied on the ground that counsel would not be allowed." Defendants Mandelbaum and Hicks swear to the same statement. These are merely some of the many indications with which the papers are replete tending to corroborate plaintiff's version of the character and manner of the proceedings—all irreconcilable with the defendants' contention that it was a harmless inquiry to determine whether the more serious proceeding should be set afoot subsequently.

The conclusion is irresistible that an effort was made to proceed against the plaintiff without warrant of law, charter, or by-law in a

manner which carried with it imminent danger of irremediable damage. Down to the time the order to show cause, with the stay, was obtained, there was no suggestion that the supervisory committee was acting under any other provision than section 35 of the by-laws. That section points unerringly to proceedings under section 36 and the following sections,· which may lead directly onward to suspension or expulsion. Plaintiff was warranted in believing, as, indeed, the court is, that the proceedings were instituted with a view to imposing one or other of those penalties upon him. The law is settled that a member of an organization, such as the New York Cotton Exchange is, must first exhaust his remedy within the corporation before the courts will interfere; but the cases wherein this rule is laid down are those in which the proceedings against a member are commenced and conducted in conformity with the provisions of the constitution and by-laws of the organization. Here plaintiff's complaint is that the proceedings against him were instituted and conducted contrary to the by-laws.

In the first notice to him to appear before the supervisory committee he was, in substance, required to appear to give evidence against himself. The sworn statements of the members of the supervisory committee sufficiently show that their attitude was that of judges toward a culprit at the bar, rather than that of fellow members of an organization conferring about its best interests, with a view to punishing misconduct on the part of some other member. That there was no hope of redress in the board of managers, the highest power within the Exchange to which he could appeal, was made manifest by its approval in advance of the illegal methods pursued by the supervisory committee. The law does not require resort to higher authority within the organization when it appears that such action would be futile. Plaintiff's only hope for protection against the calamity which threatened him lay in a resort to this court, and I do not think relief should be denied to him.

The motion for a temporary injunction should therefore be granted, enjoining the defendants from prosecuting against him the proceedings instituted by the notice of August 19, 1907, and from proceeding against him in any way except in strict conformity with the charter and by-laws of the Exchange. No restraint should, however, be imposed upon the defendants affecting their right to proceed against him in any manner authorized by the charter and the by-laws. In other respects the application should be denied.